UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TREATMENT ACTION GROUP and<br>GLOBAL HEALTH JUSTICE PARTNERSHIP,<br><br>    Plaintiffs,<br><br>    v.<br><br>FOOD AND DRUG ADMINISTRATION and<br>DEPARTMENT OF HEALTH AND HUMAN<br>SERVICES,<br><br>    Defendants. | Case No. _____<br><br>ECF Case |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

### INTRODUCTION

1. The Food and Drug Administration ("FDA") is charged with determining which drugs are safe and effective for public use. The agency makes these determinations based on clinical trial data submitted by drug manufacturers, yet the FDA does not release the raw clinical trial data to the public, even after a drug has been approved and marketed to consumers. Public disclosure of this data—with appropriate redactions to protect patient privacy—is mandated by the Freedom of Information Act and is essential to enable independent review by outside scientists, researchers, public health organizations, patient advocates, and others. This oversight is necessary to ensure that the FDA is fulfilling its core duties of ensuring the safety and efficacy of drugs.

2. Over the past 18 months, the FDA has approved two groundbreaking drugs for the treatment of hepatitis C virus ("HCV"): Sovaldi (sofosbuvir) and Harvoni (sofosbuvir/ledipasvir). The drugs promise not simply better treatment for HCV, but a cure. They

are also enormously costly. Initial pricing for the Sovaldi was $1,000 per pill, and a full course of treatment cost $84,000 and $94,500 for Sovaldi and Harvoni, respectively. Despite the high cost of the drugs and their approval for widespread use, the underlying clinical trial data has not been made available to the public or even to the scientific community.

3. Public access to the raw clinical trial data is necessary so that doctors and patients can make informed treatment decisions and cost-benefit determinations. As it stands now, doctors and patients lack the benefit of any independent assessment of the data that led to the approval of Sovaldi and Harvoni. Moreover, given the high cost of the drugs, state healthcare programs and private insurers need to make difficult decisions about how to prioritize access to the drugs. The drugs have already placed an enormous strain on state budgets, and have led numerous insurers to institute non-evidence based exclusion criteria and other restrictions that inhibit access to these lifesaving medications. It is crucial that policymakers be able to evaluate the cost-effectiveness of these drugs based on the underlying clinical data so that evidence can lead decisions about their availability.

4. Since their approval, hundreds of thousands of patients have been prescribed Sovaldi and Harvoni, and the drugs promise to become the backbone of HCV treatment worldwide. Available data suggest that the drugs have been widely used to treat HCV patients who face variants of the virus or other circumstances that were little-studied during the clinical trials. The adequacy of clinical trials is a particular concern with respect to these drugs because both were approved on an accelerated timeline, under the FDA's "Breakthrough-Therapy" designation program. While the program aims to streamline approval for promising drugs, it may increase the risk that gaps in drug efficacy will go undiscovered, or that side effects or

contraindications will go unnoticed. Independent analysis of patient-level clinical trial data is essential to identify and bring to light unresolved safety and efficacy issues.

5.      Because of the importance of public access to clinical trial data in general, and the particular need for disclosure with respect to Sovaldi and Harvoni, plaintiffs Treatment Action Group ("TAG") and the Global Health Justice Partnership ("GHJP") bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, to compel the FDA and its parent agency, the Department of Health and Human Services ("HHS"), to release the clinical trial data that was submitted for the two drugs, as well as communications between the FDA and the manufacturer concerning the design of clinical trials, and related information regarding the FDA's approval process.

6.      Plaintiffs bring this suit after trying and failing to obtain access to the data voluntarily. On November 18, 2014, TAG and GHJP wrote to the drugs' manufacturer, Gilead Sciences, to ask that it agree to release patient-level clinical trial data. TAG and GHJP received no response. On December 17, 2014, plaintiffs submitted their FOIA requests to the FDA and HHS ("the FOIA Requests") seeking disclosure of the information on an expedited basis. The FDA denied plaintiffs' request for expedited processing and ultimately informed plaintiffs that it would take an estimated 18-24 months to process their request, in clear violation of the statutory deadlines for producing records or justifying their withholding.

7.      As a result, plaintiffs bring this lawsuit to obtain timely disclosure of the clinical trial data and related records. Given the significant public health implications of the information sought and the strong public interest in disclosure, plaintiffs seek expeditious treatment of their Complaint pursuant to 28 U.S.C. § 1657. Unless defendants disclose the requested information,

hundreds of thousands more patients will be treated with drugs whose safety, efficacy, and cost-effectiveness cannot be fully studied or understood.

## PARTIES

8.   Plaintiff Treatment Action Group is an independent, non-profit AIDS research and policy institute dedicated to fighting for better treatment, vaccines, and cures for HIV and common coinfections. TAG's Hepatitis/HIV Project collaborates with activists, community members, scientists, governments, and drug companies to make safer, more effective, and less toxic treatment for HCV available. TAG submitted the FOIA Requests, together with GHJP.

9.   Plaintiff Global Health Justice Partnership is an initiative hosted by the Yale Law School and Yale School of Public Health dedicated to generating, compiling, and distributing information about structural influences on global health. As a science-based, non-profit initiative, Global Health Justice Partnership's primary objectives are to facilitate open science, community engagement, and public health, including the availability and efficacy of HCV treatments. GHJP submitted the FOIA Requests, together with TAG.

10.   Defendant Food and Drug Administration is a component of HHS. The FDA is responsible, *inter alia*, for regulating the safety, efficacy, and security of drugs and other pharmaceutical products intended for human use. The FDA is also responsible for providing the public with accurate scientific information regarding drugs and other products. The FDA is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1). The FOIA Requests sought records from the FDA.

11.   Defendant Department of Health and Human Services is an agency within the Executive Branch of the United States government. HHS is responsible for managing a wide variety of health and welfare programs, directly and through its components. HHS is an agency

of the United States within the meaning of 5 U.S.C. 552(f)(1). The FOIA Requests sought records from HHS.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. §§ 552(a)(4)(B) and 552(a)(6)(E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-06.

13. Venue is proper in the District of Connecticut pursuant to 5 U.S.C. § 552(a)(4)(B) because GHJP's principal place of business is in New Haven, Connecticut.

## FACTS

**Public Access to Clinical Trial Data**

14. The Food, Drug, and Cosmetic Act and Defendant's implementing regulations require new drug applicants to provide "full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use." 21 U.S.C. § 355(b)(1)(A); 21 C.F.R. 314.50.

15. The statistical analysis required to evaluate this data is complex, and internal and external reviews often find evidence of significant health or budgetary implications unnoticed during the initial review.

16. Drug manufacturers design the clinical trials that provide support for their New Drug Applications ("NDAs"). The FDA then reviews the submitted trials for adequacy. The FDA does not, however, release the underlying clinical trial data to the public or the broader research community, even after a drug has been approved for sale to the public.

17. Doctors, public health professionals, and scientists have expressed concern that the FDA may be vulnerable to lobbying by drug manufacturers to accelerate approval for new

drugs. Such concerns are particularly relevant given the revolving door that exists between the FDA and the drug manufacturers it regulates. Greater transparency regarding clinical trial data would improve public confidence in the FDA's decision-making process.

18. Flaws in the design, publication, and analysis of clinical data for new drugs may obscure critical safety and efficacy issues. Drug manufacturers may suppress or de-emphasize negative clinical trials, or alter the parameters of clinical trials to highlight positive results. For instance, researchers found that GlaxosmithKline selectively published clinical trials for the antidepressant Paxil, overstating the drug's efficacy and misleading doctors and patients. Studies that purport to analyze clinical data may contain methodological flaws that can only be uncovered through external scrutiny. For instance, a prominent study analyzing clinical trials for the painkiller VIOXX used a reporting method that significantly understated the drug's effects in increasing risks of heart attacks.

19. Recognizing the public health benefits of independent scrutiny, some drug companies have voluntarily made raw patient-level clinical trial data available to researchers. For example, Johnson & Johnson and Medtronic, Inc. have partnered with the Yale Open Data Access Project to facilitate access to their clinical trial program data. GlaxoSmithKline makes anonymized patient-level data available to researchers on its website. These and other companies now routinely release the type of information plaintiffs seek to obtain through the FOIA Requests.

20. Independent analysis of clinical trial data can uncover important information about drug safety and efficacy not found by manufacturers or regulators during the approval process. For example, as part of a 2004 settlement agreement, GlaxoSmithKline published its clinical trial data in an online registry. A cardiologist subsequently conducted a meta-analysis

and found significant cardiovascular risks associated with Avandia, a diabetes medication. Similarly, an independent post-market study of Merck's popular nonsteroidal anti-inflammatory drug VIOXX revealed that the manufacturer could have identified cardiovascular risks several years before it was pulled off the market. That analysis was also based on clinical trial data released through litigation. Independent scrutiny of clinical trial data can thus accelerate the identification of potential risks to patients.

**FDA Approval of Sovaldi and Harvoni**

21. On December 6, 2013, Defendant FDA approved NDA No. N204671 for sofosbuvir, marketed as Sovaldi; and on October 10, 2014, Defendant approved NDA No. N205824 for sofosbuvir/ledipasvir, marketed as Harvoni for the treatment of the hepatitis C virus ("HCV").

22. Approximately 3.2 million people are infected with HCV in the United States. Since Sovaldi was approved in December 2013, more than 210,000 HCV patients have been treated with Sovaldi or Harvoni, and the manufacturer estimates that as many as 250,000 patients will be treated with these drugs in 2015.

23. However, Sovaldi and Harvoni's high costs—initially priced at $84,000 and $94,500 for a twelve-week course, respectively—limit access to these drugs. More than half of all HCV patients in the United States are publicly insured, and the cost of these drugs threatens to overwhelm state healthcare budgets. Because of their high cost, healthcare authorities and insurers are rationing access, denying treatment to patients who they deem to be insufficiently sick or who are substance users. It is unclear whether these judgments are based on scientific evidence about the efficacy, safety, or cost-effectiveness of the drugs in these populations.

Access to clinical trial data would allow policymakers to ensure these crucial decisions about treatment access are supported by the best available evidence.

24. Both drug applications were approved after receiving Breakthrough Therapy Designation status pursuant to 21 U.S.C. § 356(a). This designation authorizes the FDA to expedite the development and review of a drug application by "taking steps to ensure that the design of clinical studies is as efficient as practicable." 21 U.S.C. § 356(a)(3)(B)(5).

25. While accelerated approval makes potentially life-saving drugs available to patients more quickly, it also heightens the need for independent scrutiny. Available data suggest the FDA sometimes approves drugs for broad indications based on clinical studies whose populations are too small to adequately demonstrate the drugs' safety and efficacy. Participants in these studies may carry uncommon disease strains or may possess risk profiles not shared by the general population. The health consequences of the FDA's accelerated approval pathway are largely unknown, and there is some evidence suggesting that drugs approved in this manner are more likely than drugs approved with more extensive evidence to later be withdrawn from the market.

26. Public health professionals have already identified potential concerns regarding Sovaldi and Harvoni in particular. For instance, the FDA recently revised the warning labels for the drugs to reflect previously unknown interactions with the antiarrhythmia medication amiodarone. Publicly available records also suggest that the FDA approved a shorter Harvoni treatment course than that proposed by the manufacturer for non-cirrhotic patients with a low viral load, and that the FDA did so on the basis of a post-hoc analysis of data without peer review. Access to the underlying clinical trial data may well reveal other concerns about the safety and efficacy of the drugs, or the basis for the FDA's approved prescribing information.

**TAP and GHJP's FOIA Request**

27. On December 17, 2014, TAG and GHJP submitted identical FOIA requests by letter to the FDA and HHS seeking eight specific categories of records relating to the FDA's approval of Sovaldi (sofosbuvir) and Harvoni (sofosbuvir/ledipasvir). (A true and correct copy of the Request is annexed hereto as Exhibit A.)

28. Specifically, TAG and GHJP's Requests sought the following eight categories of information:

    a. All data submitted in relation to the NDAs for sofosbuvir and the sofosbuvir/ledipasvir combination from the earliest trials onward, including, but not limited to: patient-level safety and efficacy data; case report forms; informed consent forms; adjudication forms; toxicity and dosage information; pharmacology data and formulation; records generated by international experience regarding sofosbuvir.

    b. All records submitted in support of any associated accelerated NDAs or supplemental NDAs for these drugs.

    c. All study protocols submitted along with the raw pre-market approval and post-market adverse event data for sofosbuvir and the sofosbuvir/ledipasvir combination.

    d. All records regarding the Breakthrough Therapy Designation priority review of sofosbuvir and the sofosbuvir/ledipasvir combination.

    e. All records related to trials and design of trials for sofosbuvir and the sofosbuvir/ledipasvir combination, whether the trial design was approved or not approved.

    f. All correspondence between HHS or FDA and the company or companies developing sofosbuvir and the sofosbuvir/ledipasvir combination, including both Gilead Sciences and Pharmasset, that concern any aspect of the FDA approval process.

    g. Any other raw clinical trial data regarding sofosbuvir and the sofosbuvir/ledipasvir combination submitted by Gilead Sciences to the FDA in support of FDA approval.

    h. All records, including the Clinical Study Reports, regarding trials of sofosbuvir and the sofosbuvir/ledipasvir combination alone or in

combination with another drug or drugs (e.g., ribavirin and/or interferon), including, but not limited to, the following trials: SPARE Trial; ELECTRON Trial; FUSION Study; FISSION Study; POSITRON Study; VALENCE Study; NEUTRINO Study; PHOTON-1 Study; ION-1 Study; ION-2 Study; and ION-3 Study.

29. The requests explained that these records were "likely to contribute significantly to public understanding of FDA's operations and activities," and that without these records, clinicians, researchers, and public health advocates would be "unable to determine whether the FDA has properly carried out its responsibility to determine the safety and efficacy of these drugs, or to evaluate the costs and benefits of these drugs when used for the approved indications."

30. Additionally, plaintiffs requested expedited processing of their requests pursuant to 5 U.S.C. § 552(a)(6)(e). Plaintiffs explained that a "compelling need exist[ed]" for the requested information because doctors had already prescribed sofosbuvir and sofosbuvir/ledipasvir to hundreds of thousands of patients and continued to write prescriptions at a rapid rate in the United States and abroad.

31. The Requests asked defendants to produce the requested documents in their native electronic formats with any attached metadata included, provided that the files could be opened using standard commercially available software, or, if the files could not be produced in this manner, in an alternative electronic text-searchable format. The request further asked that the defendants produce databases, spreadsheets, and similar sets of data in .xls or .csv format.

32. Finally, plaintiffs requested a public interest fee waiver for duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii), because "disclosure of the requested information is in the public interest," and a fee limitation pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II), because

GHJP is an "educational institution or a non-commercial scientific institution, operated primarily for scholarly or scientific research."

**Defendants' Responses**

33. Plaintiffs received a letter dated December 19, 2014, from Pamela A. True, Information Technician at HHS, acknowledging receipt of the requests. (A true and correct copy of this response is annexed hereto as Exhibit B.)

34. Plaintiffs received a letter dated December 22, 2014, from Sarah Kotler, Acting Director in the FDA's Division of Freedom of Information, denying plaintiffs' request for expedited processing. (A true and correct copy of this response is annexed hereto as Exhibit C.)

35. On January 8, 2014, defendants' twenty-business-day window for responding to plaintiffs' FOIA request expired. At the time the window expired, defendants had not responded to plaintiffs' request for the eight categories of records or their request for a public interest fee waiver and limitation of fees.

**TAG and GHJP's Administrative Appeal**

36. By letter dated January 26, 2015, plaintiffs timely filed an administrative appeal with the Deputy Agency Chief FOI Officer in the Office of the Assistant Secretary for Public Affairs. In that letter, plaintiffs appealed: (1) defendants' denial of their request for expedited processing and (2) defendants' constructive denial of their request for the eight categories of records. (A true and correct copy of this appeal is annexed hereto as Exhibit D.)

37. Plaintiffs received a letter dated January 29, 2015, from John Ivey in HHS's Division of FOIA Services, acknowledging receipt of plaintiffs' administrative appeal. (A true and correct copy of this response is annexed hereto as Exhibit E.)

38. On January 30, 2015, plaintiffs received an email from Denise Wallace, a Senior FOIA Analyst at HHS, again acknowledging receipt of plaintiffs' administrative appeal. Ms. Wallace's email also provided instructions for accessing the NDA approval packages for Sovaldi and Harvoni through the FDA's website. Neither of these publicly available packages, however, contain the patient-level safety and efficacy data or detailed descriptions of clinical studies sought by plaintiffs' FOIA requests. (A true and correct copy of this correspondence is annexed hereto as Exhibit F.)

39. Plaintiffs received a letter dated February 19, 2015, from Catherine Teti, Executive Officer and Deputy Agency Chief FOIA Officer in the HHS's Office of the Assistant Secretary for Public Affairs, denying plaintiffs' request for expedited processing. Ms. Teti's letter stated that plaintiffs' requests did not meet the requirements for expedited processing because plaintiffs did not provide "sufficient evidence" that there was a "compelling need" for the requested information. The letter further stated that plaintiffs' FOIA requests had been placed in the "complex queue" at the FDA's Center for Drug Evaluation and Research, and that the timeframe for responding to requests in this queue is 18 to 24 months. (A true and correct copy of this response is annexed hereto as Exhibit G.)

40. By letter dated April 1, 2015, plaintiffs requested that defendants reconsider their denial of plaintiffs' administrative appeal. The letter explained the compelling need for the requested information and provided additional evidence addressing the alleged deficiencies identified by Ms. Teti's letter. (A true and correct copy of this response is annexed hereto as Exhibit H.)

41. Plaintiffs have yet to receive a response to their April 1, 2015, letter.

42. Defendants have not provided the requested information, nor have they provided a justification for withholding the requested information. Defendants have also failed to address plaintiffs' requests for a fee waiver and fee limitation. Plaintiffs have exhausted their administrative remedies.

### FIRST CAUSE OF ACTION
(Failure to expedite Plaintiffs' request)

43. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

44. Defendants' failure to expedite the processing of plaintiffs' request and appeal violates FOIA, 5 U.S.C. § 552(a)(6)(E), and defendants' corresponding regulations.

### SECOND CAUSE OF ACTION
(Failure to make reasonable search for records)

45. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

46. Defendants' failure to make a reasonable search for records requested by plaintiffs violates FOIA, 5 U.S.C. § 552(a)(3), and defendants' corresponding regulations.

### THIRD CAUSE OF ACTION
(Failure to make records available)

47. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

48. Defendants' failure timely to make available and to release all of the documents requested by plaintiffs violates FOIA, 5 U.S.C. § 552(a)(3)(A), and defendants' corresponding regulations.

### FOURTH CAUSE OF ACTION
(<u>Wrongful withholding of records</u>)

49. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

50. Defendants' wrongful withholding of records, or portions thereof, requested by plaintiffs violates FOIA, 5 U.S.C. § 552(a)(3)(A) and 5 U.S.C. § 552(a)(6)(A), and defendants' corresponding regulations.

### FIFTH CAUSE OF ACTION
(<u>Failure to grant waiver of fees</u>)

51. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

52. Defendants' failure to grant plaintiffs a waiver of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(iii), and defendants' corresponding regulations.

### SIXTH CAUSE OF ACTION
(<u>Failure to grant limitation of fees</u>)

53. Plaintiffs repeat, reallege, and incorporate the allegations in the foregoing paragraphs as though fully set forth herein.

54. Defendants' failure to grant a limitation of fees violates FOIA, 5 U.S.C. § 552(a)(4)(A)(ii)(II), and Defendants' corresponding regulations.

### RELIEF REQUESTED

**WHEREFORE**, plaintiffs respectfully pray that this Court:

a. Expedite consideration of this Complaint pursuant to 28 U.S.C. § 1657;

b. Declare that defendants improperly failed to grant expedited consideration to plaintiffs' FOIA Requests and order defendants immediately to conduct and complete a thorough search for all responsive records;

    c.    Order defendants immediately and expeditiously to provide to plaintiffs copies of the requested records;

    d.    Order defendants to provide to plaintiffs copies of the records in their native electronic format or other electronic format, as requested;

    e.    Enjoin defendants from unlawfully withholding records, or portions thereof;

    f.    Enjoin defendants from assessing any fees against plaintiffs in relation to the processing of the FOIA Requests;

    g.    Award plaintiffs the costs of this proceeding, including reasonable attorneys' fees and costs, pursuant to 5 U.S.C. § 552(a)(4)(E); and

    h.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

MEDIA FREEDOM AND INFORMATION ACCESS CLINIC, YALE LAW SCHOOL

By: /s/Jonathan M. Manes
Jonathan M. Manes, ct29574
Amanda Lynch (law student intern)
Ben Picozzi (law student intern)
P.O. Box 208215
New Haven, CT 06520-8215
Tel: (203) 432-9387
Fax: (203) 432-3034
jonathan.manes@yale.edu

David A. Schulz
321 West 44th Street, Suite 1000
New York, NY 10036
Tel: (212) 850-6100
Fax: (212) 850-6299
dschulz@lskslaw.com

*Counsel for the Plaintiffs*

Dated: June 25, 2015
       New Haven, Connecticut